E-FILED
Thursday, 17 June, 2021  09:42:09 AM
Clerk, U.S. District Court, ILCD

# Exhibit B

```
1          IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT
                      DU PAGE COUNTY, ILLINOIS
2

3    JANE DOE, individually and on    )
     behalf of all others similarly   )
4    situated,                        )
                                      )
5            Plaintiff,               )
                                      )
6       -vs-                          ) 20 L 1400
                                      ) Motions
7    ELMHURST UNIVERSITY,             )
                                      )
8            Defendant.               )

9

10

11                   REPORT OF VIDEOCONFERENCE PROCEEDINGS

12   had at the hearing of the above-entitled cause, before

13   the Honorable BRYAN S. CHAPMAN, Judge of said court,

14   DuPage County, Illinois, recorded via Zoom and

15   transcribed by THERESA HARRIS, Certified Shorthand

16   Official Court Reporter, commencing on the **25th day of**

17   **May, 2021**.

18

19

20

21

22

23

24
```

```
 1    PRESENT (via Zoom):

 2         MURRAY MURPHY MOUL + BASIL, LLP, by
           MR. BRIAN K. MURPHY,
 3
                appeared on behalf of JANE DOE, Plaintiff;
 4

 5         McDONALD HOPKINS, LLC, by
           MR. CHRISTOPHER F. ALLEN and
 6         MR. CHRISTOPHER G. DEAN,

 7              appeared on behalf of ELMHURST UNIVERSITY,
                Defendant.
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

1       THE COURT:  All right.  Good morning, everyone.

2   This is 20 L 1400, Jane Doe versus Elmhurst University.

3   We're up on a 619.1 as well as a supplemental 615.

4           Do the parties want to go ahead and state

5   their names and appearances for the record?

6       MR. MURPHY:  Good afternoon, your Honor.  Brian

7   Murphy on behalf of the plaintiffs.

8       THE COURT:  Okay.

9       MR. ALLEN:  Good morning, your Honor.  Christopher

10  Allen on behalf of the defendant.  And my colleague

11  Christopher Dean is with me as well.

12      MR. DEAN:  Good morning, your Honor.

13      THE COURT:  Morning.

14          Mr. Michael Hayes, are you -- do you have a

15  matter on -- are you part of this case?

16      MR. HAYES:  No, Judge.  I have a similar issue

17  case.  I was just observing as a member of the public,

18  if that's okay.

19      THE COURT:  Absolutely right.  That's fine.

20          Well, okay.  Good morning, everyone.  This

21  is -- this is an interesting one.  We have a lot of

22  BIPA cases coming through the system, as I'm sure you

23  all are well aware.  The issues vary.

24          I have to confess, this is the first time

1    I've seen this particular issue, and by this issue, I

2    mean with a university, and then I also mean the

3    exemption that is argued in the supplemental motion.

4          I was thinking a little bit about how I

5    wanted to structure the hearing.  I think hearing the

6    supplemental motion first makes the most sense.  You

7    know, some say, well, have they -- do they have a

8    proper -- you know, have they pled the complaint

9    sufficiently?  Let's get there first.  The parties are

10   like, well, but if they are exempt as a matter of law,

11   we need to resolve that question first before we get to

12   the complaint.

13         I would like to spend the majority of our

14   time this morning on this particular issue, the

15   exemption that is raised in the supplemental motion.

16   It is 1425(c).  I have read the briefs, the motion --

17   I've read the briefs, counsel.

18         Mr. Allen, are you going to argue?

19         MR. ALLEN:  Yes, your Honor.

20         THE COURT:  All right.  It's your motion.

21         MR. ALLEN:  Thank you, your Honor.

22         THE COURT:  If you'd like to -- well, here, I was

23   just going to give you the same advice I give everybody

24   here.  I don't need a regurgitation of everything in

1     the brief, but I'll let you make -- happy to let you

2     make a record, if there's anything you want me to focus

3     on with respect to the applicability of the exemption,

4     feel free.

5            MR. ALLEN:  Thank you, your Honor.

6               I know you've read the briefs, so I won't

7     belabor the point, but I want to emphasize that from

8     our point of view this exemption and the application of

9     it to this case is clear and straightforward.

10              Section 25(c) of BIPA says that the statute

11     doesn't apply in any manner to a financial institution

12     subject to Title V of the GLBA.

13            THE COURT:  Let me stop you right there.

14            MR. ALLEN:  Okay.

15            THE COURT:  Mr. -- is it Murphy?  I just see

16     you're Brian M.  Mr. Murphy.

17            MR. MURPHY:  Yes.  Yes, sir.

18            THE COURT:  Do you agree that, as a general rule,

19     colleges and universities, such as Elmhurst, maybe not

20     specifically Elmhurst, but such as Elmhurst are, in

21     fact, based on the documents identified in the motions,

22     subject to Title V of the GLBA?

23            MR. MURPHY:  I don't, only inasmuch as what the

24     FTC has said is that many, if not all, sort of could be

1    subject to it.  And so in particular -- so I -- yeah, I

2    understand -- I stand -- I understand that general

3    proposition that the FTC has sort of made in its

4    rule-making process made that statement.

5              To be clear, it didn't adopt anything other

6    than the sort of what I would call the FERPA exception

7    in the actual regs that were issued as a result, right,

8    because people were advocating to the FTC when they

9    came down with the regs to exclude -- exclude colleges.

10   They didn't do that.

11             What they did is they created a special

12   carve-out for them, if you will, which is, if you

13   comply with FERPA, we'll deem that you have complied

14   with the requirements under the GLBA.

15             THE COURT:  All right.

16             MR. MURPHY:  Now, on the factual issue as to

17   whether --

18             THE COURT:  Hold on.

19             MR. MURPHY:  Sorry.

20             THE COURT:  Hold on.  I'm not asking you about the

21   factual issues.

22             MR. MURPHY:  Okay.  I'm sorry.

23             THE COURT:  I'm assuming that that issue is out

24   there.  I just want to see where we agree.

1      MR. MURPHY:  Sure.

2      THE COURT:  If anywhere.  So --

3      MR. MURPHY:  Sure.

4      THE COURT:  -- I'm going to turn it back over to

5  Mr. Allen.  You're welcome to respond to what you just

6  heard.  You're also welcome to continue more generally,

7  and I promise I'll do my best not to do any more of

8  that.

9      MR. ALLEN:  To respond briefly to what counsel

10  just said, the FTC did more than just say that colleges

11  and universities may be subject to the GLBA.

12          What it said -- you know, when they were

13  promulgating this rule, commentators made a specific

14  request to carve colleges and universities out to say

15  that they were not financial institutions, and the FTC

16  explicitly rejected that suggestion, and they said, and

17  I'm quoting here, the commission disagrees with those

18  commentators who suggested that colleges and

19  universities are not financial institutions.  Many, if

20  not all, such institutions appear to be significantly

21  engaged in lending funds to consumers.

22          And as Mr. Murphy said, you know, rather than

23  excluding them, what they did was they said, you know,

24  we understand that FERPA already imposes some

1    requirements on you in this area in terms of

2    protecting, you know, the information of students.

3    What we're going to say is if you comply with FERPA, we

4    will deem you in compliance with the GLBA, but by

5    saying you're deemed in compliance, that is essentially

6    saying, you know, you would otherwise be subject to the

7    GLBA, and you are subject to the GLBA, we're just

8    saying that you have met your requirements under the

9    GLBA if you are in compliance with FERPA.

10            But the fact that they have this FERPA

11   provision in there is merely confirmation that, you

12   know, the GLBA does apply to colleges and universities

13   and that they are financial institutions.  You wouldn't

14   need this FERPA provision saying you're deemed in

15   compliance if the GLBA didn't otherwise apply to

16   colleges and universities.

17            THE COURT:  Mm-hmm.

18            MR. ALLEN:  So that's my response to counsel on

19   that point.

20            Skipping ahead to the statutory

21   interpretation question of BIPA because, you know, I

22   think the Court has a good sense of, you know, how the

23   GLBA works in this context.

24            As your Honor knows, Section 25(c) says that

1    the statute doesn't apply in any manner to a financial

2    institution subject to Title V of the federal

3    Gramm-Leach-Bliley Act, and as we have argued the use

4    of financial institution in that provision is meant to

5    be co-extensive with the GLBA, it's meant to sweep up

6    the same entities as covered already by the GLBA.

7              Plaintiff has argued that the Court should

8    instead apply an ordinary or dictionary meaning to BIPA

9    and apply a different definition of financial

10   institution than the one that is applied to the GLBA.

11             I would say that that argument fails for two

12   separate reasons.  First, it violates Illinois' rules

13   of statutory interpretation which say that the Court

14   has to interpret the words and phrases in a statute in

15   the context of the provision as a whole.

16             Plaintiff is asking you to do the exact

17   opposite of that, to look at the term financial

18   institution in a vacuum ignoring the surrounding

19   context.

20             Section 25(c) of BIPA doesn't say that a

21   financial institution generally is exempt, it says that

22   a financial institution that is subject to Title V of

23   the GLBA is exempt.

24             THE COURT:  There's been constitutional questions

1    on that with respect to BIPA in terms of is there a

2    special carve-out, and the --

3         MR. ALLEN:  Yes, your Honor.

4         THE COURT:  -- answer is no for that very reason.

5         MR. ALLEN:  Yes, your Honor.  You know, as, you

6    know, we set forth in the brief, in our view this is

7    really an anti-preemption provision, and the legitimate

8    basis that the legislature had for including this was

9    the concern that, you know, the GLBA imposes a bunch of

10   requirements on financial institutions to protect the

11   security and privacy of customer information, and it

12   also says that any state statute that is inconsistent

13   with the GLBA is preempted.

14        And so the legislature, in enacting

15   Section 25(c), was trying to avoid any preemption

16   argument and was trying to avoid any suggestion that

17   BIPA was subject to constitutional challenge because it

18   was inconsistent with the GLBA.

19        And so when plaintiff asked the Court to

20   apply a different definition of financial institution

21   that is not co-extensive with the GLBA, it runs right

22   into that preemption concern that was motivating the

23   legislature in the first place.

24        If there are entities that are financial

1    institutions under the GLBA but are still subject to

2    BIPA and don't fall under BIPA's definition of

3    financial institution in this exemption, then you have

4    entities that are potentially raising the preemption

5    concern and that are potentially subject -- subjecting

6    the statute to challenge.

7              And as the Court noted, if there isn't this

8    preemption purpose, if the legislature wasn't acting

9    with the GLBA in mind, then it really is just this kind

10   of random handout to the financial industry that does

11   raise the concerns about this being special

12   legislation, and that, you know, does subject it to

13   challenge on other grounds.

14             And so in our view, the way to harmonize the

15   statute with the plain text and with the purpose that

16   the legislature was trying to achieve is to apply the

17   same definition of financial institution to both the

18   GLBA and to this BIPA exception; therefore, you're

19   avoiding the preemption concern and also avoiding any

20   argument about special legislation or a handout to the

21   financial institution -- industry that doesn't have

22   some sort of reasonable basis.

23             And so we would say that, you know, our

24   interpretation is consistent both with the plain text

1    of the statute and the need to provide, you know,

2    meaning to every word in this provision, including the

3    GLBA, because I don't believe that plaintiff's

4    interpretation can really explain why the legislature

5    referenced the GLBA at all or why they were concerned

6    about the GLBA and defer the purposes that the

7    legislature was trying to achieve.

8            Thank you, your Honor.

9        THE COURT:  Thank you.

10           All right.  Mr. Murphy, I'll invite you to go

11   ahead and -- like I said, I read the briefs, I've read

12   some of the case law cited that wasn't developed in the

13   briefing, but I've read some of that, I've read some of

14   the CFR's to get a better sense of this argument, so I

15   don't need an epistle.

16       MR. MURPHY:  Okay.

17       THE COURT:  But I don't want to shortchange you.

18   Tell me --

19       MR. MURPHY:  Understood.

20       THE COURT:  -- whatever you want to tell me.

21       MR. MURPHY:  Okay.  And, obviously, we didn't get

22   a chance yet to sort of reply to the reply brief, and

23   I'll try to sort of focus on the arguments --

24       THE COURT:  Sure, that's fine.

1      MR. MURPHY:  -- that I think are raised there.

2          And I want to sort of start with this

3   preemption issue when it comes to the GLBA because,

4   honestly, I think their -- their reply brief was a

5   little bit misleading because it talks about the GLBA

6   and the concern of preemption, and the language they

7   use in their brief -- let me pull this out -- says that

8   the GLBA preempts any state statute to the extent that

9   such statute --

10      THE COURT:  Just tell me, where are you at?  I've

11   got the reply brief in front of me.

12      MR. MURPHY:  Oh, I'm on Page 5, the start of

13   Section 2 of their brief.

14      THE COURT:  All right.

15      MR. MURPHY:  They say, the GLBA preempts any state

16   statute to the extent that such statute is inconsistent

17   with the GLBA.

18      THE COURT:  Mm-hmm.

19      MR. MURPHY:  But if you look to 15 U.S.C. 6807,

20   Section A, if you look to the full context of that, it

21   actually goes on to say that it's only preempted to the

22   extent of the inconsistency; and then, furthermore,

23   there's an entire Section B of the statute that says,

24   actually, it's the opposite of preemption.

```
 1              It says, to the extent any state statute
 2     provides greater protections that -- that's not a
 3     problem at all, and that's exactly what BIPA does,
 4     right?  BIPA provides greater privacy protections than
 5     the GBLA [sic] does.
 6              The GBLA doesn't really talk to any biometric
 7     issues whatsoever, and so there's absolutely no
 8     preemption issue that could be articulated to BIPA
 9     applying to -- applying to anyone as a financial
10     institution under the GLBA.
11              Now, the preemption issue --
12          THE COURT:  Let me -- let me ask you a quick
13     question just to kind of frame the preemption argument.
14              Preemption is relevant to this conversation
15     to understand, at least according to Elmhurst, why --
16     why the legislature would use the phrase financial
17     institution, but that's getting to intent, right?
18              You might be right, at least conceivably,
19     right, that there isn't the preemption concerns that
20     defendant has expressed, but at the same time,
21     depending on how -- how the Court defines financial
22     institution, it may not matter, right?  It's at least
23     conceivable.
24          MR. MURPHY:  Yep.
```

1    THE COURT:  So we can talk all day about

2  preemption, but, again, that really just goes to if

3  we're really at loggerheads over what financial

4  institution is meant to mean, only then does that

5  become particularly helpful.

6    MR. MURPHY:  Right.  And I -- and so to go to that

7  preemption issue, look, we have to -- nobody knows,

8  right, nobody can speak to really why they included the

9  language as they did in the statute, right?

10    What we do know for sure, right, is that

11  language is not in the definitional section, it's not

12  in the meat of it.  What it -- those are all located

13  under the construction portion of the statute, right,

14  meaning, again, this is for interpretation purposes,

15  perhaps.

16    But I think -- and we have evidence that I

17  think confirms our belief in terms of what the intent

18  was was the carve-out, was to carve out banks, and

19  that's because, you know, there's supreme court

20  precedent on this issue which, you know, in particular

21  when it comes to banks, state -- you know, state

22  legislatures can't -- can't impose state statutes that

23  would, you know, interfere with national banks or

24  prevent or significantly interfere with their

1  operations, right?

2          Supreme court case, you know, Barnett Bank of

3  Marion County versus Nelson, for instance, walks

4  through this.  And we hear, you know, when the statute

5  is introduced, right, the legislature says, hey,

6  there's a carve-out for banks that are reg -- that are

7  covered by federal law.

8          And that -- that sort of makes things

9  consistent, right?  Because as I read the statute,

10  there's two portions.  It's financial institutions --

11          THE COURT:  Mm-hmm.

12          MR. MURPHY:  -- and then financial institutions

13  that are subject to the GLBA, right, so you can, for

14  instance, have --

15          THE COURT:  Those are -- the latter are the only

16  ones who enjoy the exemption.

17          MR. MURPHY:  Correct.  Right.

18          So, for instance, you could have a state

19  financial institution -- now, here's the other thing as

20  I would say, when -- when -- what -- part of their --

21  the problem with their argument is in their brief they

22  say that -- again, on Page 3 of the brief at the top

23  they say, the legislature did not say that financial

24  institutions generally are exempt from BIPA.  Okay?

1          Here's the problem.  What the FTC has done

2     with the GLBA, to protect consumers, and they even

3     acknowledge in their regulations that they've applied

4     an extremely broad definition of the word financial

5     institution, extremely broad.

6          So I'd like -- I'd like to know from

7     defendants, what is a financial institution that

8     wouldn't be exempt under their broad language under the

9     FTC?  I don't know that there is one.

10         THE COURT:  I'm glad you asked.  Well --

11         MR. MURPHY:  So that --

12         THE COURT:  Well, no, actually, hold on.  Let me

13     finish here.  Let me jump in here.

14         MR. MURPHY:  Yep.

15         THE COURT:  16 C.F.R. 313.3 provides all sorts of

16     examples of what is a financial institution and what is

17     not a financial institution.

18         And so if we take a look at that reg, it kind

19     of addresses some of the concerns you raise in your

20     brief.  I think your point is a fair one, but let me

21     ask you this, let me go back for a moment here.

22         You said it's really about banks.  Well, if

23     it was really about banks, couldn't the legislature

24     have simply said that?

```
1    MR. MURPHY:  No, there is no doubt.  There is no
2    doubt that one could have, you know, drafted this more
3    artfully, but also the legislature knew in this
4    statute --
5         THE COURT:  Mm-hmm.
6         MR. MURPHY:  -- how to -- how to -- how to place a
7    definition of another statute -- of another statute
8    into the statute, right?  They did that elsewhere where
9    they adopted the definition from another statute
10   specifically.
11        They didn't do that here.  They could have
12   said financial institution, you know, as that
13   definition is used in the GLBA.  They could have, as we
14   said, used any entity that was subject to the GLBA,
15   because, again, if you're subject to the GLBA, you are
16   a financial institution.  And so --
17        THE COURT:  Let me ask you something.  Do you
18   think -- you mention in your brief that you think a
19   grocery store might be subject to -- might be a
20   financial institution for purposes of BIPA, right?
21        MR. MURPHY:  And, your Honor -- yes, and I think
22   even stronger is a gas station, because, again, both of
23   those -- and defendants --
24        THE COURT:  Why a gas station?
```

1        MR. MURPHY:  Well, just --

2        THE COURT:  Why a gas station and why a grocery

3    store?

4        MR. MURPHY:  Because those -- both of those

5    entities -- gas stations I think more famously are

6    known for issuing their own credit cards.

7            I don't think there's a -- there's not a, you

8    know, Shell, Exxon-Mobile.  I think the Court can take

9    judicial notice of the fact that all of those get --

10   the major gas stations in the state of Illinois issue

11   their own credit cards.

12           In fact, I think those were entities that

13   issued credit cards probably that most people had long

14   before they had any other kind of credit card.

15           And defendants took us to task for not

16   pointing to law that showed that those entities would,

17   in fact, be sort of financial institutions; but, you

18   know, we didn't -- we don't have to point to sort of a

19   finding from the FTC, we can look to the reg we were

20   just talking about your Honor, 16 C.F.R. 313.3.

21       THE COURT:  Right.

22       MR. MURPHY:  It specifically says in its

23   examples --

24       THE COURT:  Hold on.  It's law, so tell me where

1  you're at.

2      MR. MURPHY:  Okay.  Sorry.  I'm getting excited.

3  It's under (k) --

4      THE COURT:  Yes.

5      MR. MURPHY:  -- (2)(i).

6          So (2) is examples of financial institutions,

7  and (i) is a retailer that extends credit by issuing

8  its own credit card directly to consumers is a

9  financial institution.

10      THE COURT:  Right.

11      MR. MURPHY:  And I would submit, your Honor, that

12  it can't be that the legislature having said we need to

13  pass this because we're concerned about grocery stores

14  and gas stations and then sort of ends up in a catchall

15  where if we -- again, if we follow their -- their

16  exclusion here -- let's be clear what the Court is

17  going to do.  It's not just going to carve out colleges

18  and universities.  It's going to carve out a broad

19  class of retailers in the state of Illinois, you know,

20  Kohl's, Target, Walmart, all of these entities have

21  credit -- issue credit cards.

22          And so what we're going to do is do the

23  opposite of what I think the legislature was trying to

24  do.  They were trying to find, you know, a narrow

1    carve-out to make sure they didn't run afoul of sort of

2    federal -- federally regulated banks, and now we're

3    going to sort of rip the whole thing open and no one is

4    going to be covered.

5         THE COURT:  All right.  So here we -- here we get

6    to the rub, right?  And, Mr. Allen, I suppose I should

7    let you respond to that before I -- before I delve in

8    here.

9              Mr. Allen, you want to respond -- reply to

10   that?

11        MR. ALLEN:  Yeah, a few responses, your Honor.

12             First, the -- under our interpretation, you

13   know, it does not swing nearly as broadly as counsel

14   suggests.  As we pointed out in our briefs, you know,

15   the definition of financial institution is limited to

16   entities that engage in a substantial amount of

17   financial activity, as defined in the statute.

18             So to the extent that --

19        THE COURT:  But isn't Mr. Murphy correct that

20   313.3 does provide -- I mean, there are examples within

21   313.3 that are not what one necessarily considers a

22   financial institution, right, the connotative meaning

23   of financial institution as opposed to the denotative

24   is, in fact, sort of your Chase Bank, your JP Morgan,

1   your, you know, financial institutions, right, maybe,

2   you know, various types of high finance, whatnot.

3           313, the FTC has promulgated a rule that

4   gives an example -- examples that go far beyond, so it

5   strikes the Court as reasonable that Mr. Murphy may be

6   correct that the language in this statute may go well

7   beyond what the legislature intended.

8           Isn't that at least possible?

9       MR. ALLEN:  I -- your Honor, I agree that the

10  FTC's definition of financial institution is broader

11  than the traditional notion of banks and credit unions

12  that people probably typically think of when they think

13  of a financial institution.

14          What I would say there is, you know, if the

15  legislature was just concerned about banks, as

16  Mr. Murphy suggests, they didn't need to reference the

17  GLBA at all.  They could have just said, you know,

18  banks or national -- nationally regulated banks are

19  exempt because of the National Banking Act.

20          But under even Mr. Murphy's definition, the

21  term financial institution is broader than just

22  nationally regulated banks.  He includes pawn brokers

23  and other entities that, you know, would not be

24  necessary if the goal was just to avoid, you know,

1    regulation of nationally -- or nationally regulated

2    banks.

3            And so I think even under his definition, his

4    interpretation of this provision does not work with

5    what he's saying the stated purpose is, because even

6    under his interpretation, it's broader than nationally

7    regulated banks, and I think he still can't explain

8    what the reference to the GLBA is doing in here at all

9    and why the legislature thought he needed to exempt the

10   GLBA, if it's not to get at this preemption concern.

11           And just to emphasize, your Honor, this

12   preemption concern isn't just something that, you know,

13   we have invented looking at the statute.  Other courts

14   have looked at this and said, in rejecting these

15   arguments that this is, you know, unconstitutional

16   special legislation to benefit the financial industry.

17           And we cited two cases.  We cited the

18   Stauffer case from the Southern District of Illinois,

19   and we cited the Brew case from the Circuit Court of

20   Cook County saying the legitimate purpose of this

21   provision was to avoid this preemption concern.

22           And to Mr. Murphy's point that, you know, he

23   believes the preemption concern is overstated or

24   unnecessary because the GLBA, you know, only preempts

1    to the extent that the state statute provides less

2    protection, that is maybe just a suggestion that the

3    legislature is being more cautious than perhaps it

4    strictly needed to, but that doesn't really get at what

5    the legislature's actual intent was in enacting this

6    provision which, as the Court knows, is the goal in

7    interpreting this language is, what was the legislature

8    trying to do here?

9           So if the legislature, as we believe is

10   clear, was trying to avoid this preemption concern,

11   even if it was maybe being more cautious than it needed

12   to be, the fact is that, you know, the legislature

13   appears to clearly have been acting with this

14   anti-preemption purpose and specifically referenced the

15   GLBA, and presumably did so for a reason, and I think

16   that, you know, the Court under several rules of

17   statutory interpretation needs to give full meaning to

18   all of the words in this provision, including the GLBA,

19   and I think that plaintiff's proposed interpretation

20   just does not do that.

21       THE COURT:  Yeah.  Mr. Murphy, let me -- I'm going

22   to give you a chance to respond to that.  I want to

23   make a couple observations.

24           One is, if I look at Page 7 of your response

1    brief, first full paragraph starting with the word

2    similarly.

3        MR. MURPHY:  Mm-hmm.

4        THE COURT:  Now, similarly here, if the

5    legislature intended to deny students of private

6    colleges and universities BIPA's protections in all

7    circumstances, even outside the context of receiving

8    financial aid, it could have done so explicitly.

9        I think that that, you know, in some respects

10   almost proves too much with respect to your argument

11   about banks, so I think that's worth pointing out.

12       The other thing I want to -- I want to point

13   out two other things.  You mentioned Stauffer,

14   Mr. Allen.  I read that case, and I'm looking at --

15   this is issued by the Southern District -- the U.S.

16   District Court in the Southern District of Illinois,

17   Judge Beatty down there had the same -- had the

18   following observation about the extent of -- sort of

19   how to think about the financial institution exemption

20   that's at issue in front of this Court today.

21       Page 903, the end of 903, that's

22   480 F.Supp.3d 888.  And this case was not discussed in

23   any meaningful way by either side.  I think it's

24   helpful, at least to a certain extent.

1    Now, Judge Beatty goes on to write as

2    follows:  Based on the pleadings it seems doubtful that

3    defendant Pathfinder could be designated as a financial

4    institution and, therefore, exempt from BIPA.  BIPA's

5    financial institution exemption is explicit in that

6    BIPA does not apply to financial institutions already

7    subjected to GLBA.

8    The Federal Trade Commission describes the

9    type of financial institutions that must comply with

10   GLBA, which includes, quote, all businesses, regardless

11   of size, that are, quote, significantly engaged, close

12   quote, in providing financial products or services.

13   This includes, according to the Court, for example,

14   check cashing businesses, payday lenders, mortgage

15   brokers, non-bank lenders, personal property or real

16   estate appraisers, profession tax preparers, and

17   courier services.

18   You know, I think it's -- I think it's, you

19   know -- it's certainly not binding by any means, but I

20   think it's helpful to see another Court look at this

21   exemption and decide whether -- and there seems to be

22   no argument that that Court was to -- or suggestion

23   that the Court should have divorced financial

24   institution from the actual rest of the sentence.

```
 1              And to that end, to my mind, to this Court's
 2     mind, a plain reading of 1425, the sentence defines
 3     financial institutions within it, which is consistent
 4     with Mr. Allen's -- with Elmhurst's argument here.
 5              I'm pulling up the language.  1425(c) of BIPA
 6     provides that nothing in the act shall be deemed to
 7     apply in any manner to a financial institution or
 8     affiliate of a financial institution, again, going
 9     perhaps even broader, that is subject -- that is
10     subject to Title V of federal Gramm-Leach-Bliley of
11     1999 and the rules promulgated thereunder.
12              So, I mean, I -- I considered seeing if the
13     parties wanted to submit surbriefs on Stauffer, because
14     it wasn't really addressed.  I don't know that I need
15     surbriefs on this, because this specific issue wasn't
16     addressed, and I think -- I think Judge Beatty's
17     reasoning is, you know, somewhat clear.
18              Mr. Allen, I'm going to give you the last
19     word.  That's my concern here, Mr. Murphy.  I want to
20     give you a chance to respond.
21              Now, this is step one of this motion.  It's
22     not the entire motion.  It's step one.  You want to
23     respond to anything I've said about Stauffer or
24     anything Mr. Allen has pointed out?
```

1       MR. MURPHY:  I do think Stauffer sort of -- I

2  think the facts sort of drove the analysis there.  I

3  don't think the Court really --

4       THE COURT:  Right.

5       MR. MURPHY:  -- broke down sort of, you know, sort

6  of, as we see it, which is, as a two-step process --

7       THE COURT:  I agree with that.

8       MR. MURPHY:  -- in terms of --

9       THE COURT:  I agree with that.

10      MR. MURPHY:  And I do think -- I laughingly said

11  one of our best arguments I think here was the fact

12  that it took our really seasoned opposing counsel four

13  or five months to figure out that their client was a

14  financial institution, because their first reading of

15  the statute didn't lead them to believe it, so how is

16  it that we would expect that the Illinois legislature

17  thought they were going to be covered when they passed

18  the statute?

19          Also, your Honor, I would like to sort of

20  focus the Court back, too, in terms of when you look

21  at -- you know, we have what the FTC has said, right,

22  and we have to live with that, but when you look at

23  actually the language that's in the regs, right, in

24  terms of the actual definition of a financial

1    institution, right, in the regs, again, we're under
2    (k)(1).
3           THE COURT:  Yeah.
4           MR. MURPHY:  It says, you know, financial
5    institution means any institution the business of which
6    is engaging in financial activities as described in
7    Section 4K of the Bank Holding Act of 1956.
8                   Again, I don't know about you, but when I
9    read that I think of -- that's the JP Morgans, you
10   know, Bank of America, Wells Fargo, okay, it's the
11   business of which is engaging those.
12                  Now, the FTC, right, has taken a much
13   broader, expansive view of this definition to -- in
14   order to protect consumers, right, so they've tried
15   to -- but by doing so, that may have a devastating
16   impact on BIPA, if the Court were to adopt the
17   defendant's sort of interpretation.
18                  Because, again, now, to be clear, you know,
19   it's going to be every -- every entity that issues a
20   credit card.  It's going to be Walmart, it's going to
21   be Target, they're all going to be swept out of the
22   statute, and I don't think that that was the intent of
23   the legislature when they were using that language.
24          THE COURT:  All right.  So here's --

1           MR. MURPHY:  And they would have, you know --

2           THE COURT:  Here's the rub, right, and this is, of

3     course, easier said than done.  There's an easy fix,

4     right?  The legislature can amend BIPA to mean exactly

5     what they say.

6                Now, you know, and we -- we don't exactly

7     have divided government here in Illinois.  So, look,

8     the point is, there is -- I understand your concern,

9     and you very well may be correct.  My -- the Court's

10    particular concern here, though, is going to intent,

11    where the language -- giving it reasonable -- reading a

12    text reasonably, right?  We don't want to read it

13    strictly or liberally.  We just want to read a text

14    reasonably and give it plain meaning.

15               And, to me, financial institutions is defined

16    by whether or not the institution is subject to Title V

17    of the Gramm-Leach-Bliley Act.

18               So the idea that while you could be subject

19    to Title V of the Gramm-Leach-Bliley Act as a financial

20    institution under GLBA, but you're not a financial

21    institution under BIPA, to the Court's mind, that is an

22    unnatural reading of this provision, and so the Court

23    finds that financial institution means entities that

24    are subject to Title V of GLBA, for the reasons I've

1  indicated.

2          Now, that's step one.  Step two, I do think

3  plaintiff raises an important point in the motion about

4  whether or not, alternatively, and I've identified two

5  issues that I don't think have been properly addressed

6  by Elmhurst.

7          One is whether or not they are, in fact,

8  engaged in significant financial activities; and, two,

9  whether or not they are subject to the GLBA, and maybe

10  there's some FERPA interplay there and Elmhurst can --

11  can address that at that point in time.

12          But, Mr. Allen, my concern with the motion

13  has less to do with the statutory issue.  I think it's

14  very interesting.  I think Mr. Murphy, at the end of

15  the day, may have -- may be on to something as to what

16  the legislature was trying to do, but the Court is

17  looking at the text of the reg -- of the statute I

18  should say.

19          On the other hand, I think as your reply

20  noted in a footnote, you're prepared to offer some kind

21  of declaration, or something to that effect.  I know

22  you asked the Court to take judicial notice of websites

23  involving financial aid and whatnot.

24          And I would point out that the FTC says most,

1   if not all.  Most, you know, something to that effect,

2   so I do think Elmhurst has an obligation to establish

3   both that it is in the business of -- let's see.  Let's

4   go back to (k)(1).  That it is in the business of

5   significantly engaged in financial activities.  I think

6   Elmhurst has an obligation to do that.

7           And I would point out, Mr. Murphy, quickly,

8   you point out the Bank Holding Act provision of (k)(1).

9   There's a separate -- second and separate full sentence

10  that, to my mind, again, we're all kind of punching in

11  the dark here a little bit.  I read the second full

12  sentence, an institution that is significantly engaged

13  in financial activities is a financial institution

14  strikes me as the FTC perhaps trying to suggest that

15  that -- and there may be other entities not subject to

16  the Bank Holding Act that are also financial

17  institutions.

18          So I point that out, but I do think Elmhurst

19  has an obligation to establish that.  I think Elmhurst

20  has an obligation to establish that it is subject to

21  the GLBA; that it, in fact, attempts to comply with it

22  or FERPA or however -- however colleges and

23  universities would need to.  And I'm not convinced

24  they've done that here in this case.

```
 1              So what I'm inclined to do is I'm inclined to
 2    deny the motion to dismiss on the second piece.  I also
 3    want to point out that this motion is more of a 619 as
 4    opposed to a 615, because you're saying yes, but.  Yes,
 5    but; not so what.  Yes, but see this exception.  And
 6    you're also going to ask me to look to things outside
 7    the record, and I know that judicial notice is a, you
 8    know -- is something that parties will -- parties will
 9    ask the Court to do to kind of address that piece of
10    it.
11              But I think if -- if you wish to reraise this
12    motion as a 619, you may do so, but I do think Elmhurst
13    establishing that as a matter of fact that they are
14    subject to GLBA and that they are engaged in
15    significant financial activities is something they have
16    to do and they've not yet done.
17         MR. ALLEN:  I understand, your Honor.  We
18    certainly do intend to reraise the motion as a 619, and
19    we can submit declarations from knowledgeable personnel
20    at Elmhurst --
21         THE COURT:  And I -- you know, look, I mean, it
22    may be one of those things where Mr. Murphy says, look,
23    you know, if the statutory interpretation question is
24    what it is, maybe whether or not Mr. Murphy wants to
```

1  dispute that second piece, your client is certainly

2  welcome to do so, but I think this issue matters most

3  in this case.

4          I have -- I'm of two minds as to how to

5  handle the 615 and the MSJ.  I can either enter and

6  continue them, or I can simply deny them without

7  prejudice.  I'd almost rather just enter and continue

8  them.

9          MR. ALLEN:  We would agree to entering and

10  continuing, your Honor, that sounds good.

11          THE COURT:  Mr. Murphy?

12          MR. MURPHY:  That's fine, your Honor.

13          THE COURT:  Okay.  So what I'd like to do is I'd

14  like to give you 28 days, if you wish to reraise this

15  in some capacity.  It's a little unconventional.  Maybe

16  not.  But, again, I just think everybody is better off

17  if we get this issue resolved.

18          MR. ALLEN:  Understood, your Honor.

19          THE COURT:  Okay.  28 days to answer or otherwise

20  plead or to file some kind of supplemental motion.  I

21  think that's probably the more appropriate way to

22  phrase it.

23          MR. ALLEN:  Thank you, your Honor.

24          THE COURT:  All right.  Anything else, Mr. Murphy?

1        MR. MURPHY:  No, your Honor.

2        THE COURT:  Okay.  Thank you very much, gentlemen.

3        MR. MURPHY:  All right.  Thank you.

4        MR. ALLEN:  Thank you, your Honor.

5                    (Which were all of the proceedings had

6                     in the above-entitled matter.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

IN THE CIRCUIT COURT OF THE 18TH JUDICIAL CIRCUIT

DU PAGE COUNTY, ILLINOIS


        I, THERESA HARRIS, hereby certify that I am a

Certified Shorthand Official Court Reporter assigned to

transcribe the Zoom videoconference recording of

proceedings had of the above-entitled cause.

        I further certify that the foregoing,

consisting of Pages 1 to 36, inclusive, is a true and

accurate transcript completed to the best of my

ability, based upon the quality of the audio recording.



                Official Court Reporter
            Eighteenth Judicial Circuit of Illinois
                    DuPage County