E-FILED
Thursday, 10 March, 2022  09:23:57 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| THOMAS DUERR and GABRIEL FOLEY, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )  Case No. 1:21-cv-01096-SLD-JEH |
| v. | )<br>) |
| BRADLEY UNIVERSITY, | )<br>) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Bradley University's motion to dismiss, ECF No. 8. Also before the Court are Plaintiffs Thomas Duerr and Gabriel Foley's motion for leave to file a sur-reply, ECF No. 15, Defendant's first motion for leave to cite additional authority, ECF No. 19, and Defendant's second motion for leave to cite additional authority, ECF No. 20. For the reasons below, Defendant's motion to dismiss is GRANTED, Plaintiffs' motion to file a sur-reply is DENIED, and Defendant's motions for leave to cite additional authority are GRANTED.

### BACKGROUND[1]

Defendant is a private university in Peoria, Illinois. During the fall 2020 semester, Plaintiffs, currently undergraduates there, were enrolled in classes that incorporated remote, online exams. To take those exams, Plaintiffs were required to use Respondus Monitor, a third-party proctoring tool licensed by Defendant that is designed to detect misconduct, such as another person replacing a test-taker midway through an exam.

---

[1] At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the plaintiff's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, unless indicated otherwise, this factual background comes from the Amended Class Action Complaint, ECF No. 5.

1

The "heart" of Respondus Monitor is a "powerful artificial intelligence engine" that "performs a second-by-second analysis of the exam session" using "facial detection, motion, and lighting to analyze the student and examination environment." Am. Class Action Compl. ¶ 33 (quotation marks omitted), ECF No. 5. "[D]ata then flows into the 'Review Priority system,'" *id.* ¶ 35 (quotation marks omitted), which "rank[s] proctoring results according to the risk that violations have occurred," *id.* ¶ 36 (quotation marks omitted). All the while, "Respondus Monitor captures . . . student[s'] facial geometry and other biometric identifiers" from their webcams. *Id.* ¶ 79.

Plaintiffs bring this action on behalf of a proposed class to include "[a]ll persons who took an assessment using Respondus Monitor, as a student of Bradley University in Illinois, at any time during the five years prior to the filing of this Complaint through January 20, 2021." *Id.* ¶¶ 109–10. They allege Defendant committed multiple violations of the Illinois Biometric Information Privacy Act ("BIPA") by failing to maintain or comply with biometric information collection guidelines in violation of 740 ILCS 14/15(a) ("Section 15(a)"), *id.* ¶¶ 122–29; collecting students' biometric information in violation of 740 ILCS 14/15(b) ("Section 15(b)"), *id.* ¶¶ 130–37; profiting from biometric information in violation of 740 ILCS 14/15(c) ("Section 15(c)"), *id.* ¶¶ 138–45; and disclosing biometric information in violation of 740 ILCS 14/15(d) ("Section 15(d)"), *id.* ¶¶ 146–52.

Defendant filed the instant motion to dismiss on April 21, 2021. Mot. Dismiss 1. On June 16, 2021, Defendant moved for leave to file a reply to Plaintiff's response, ECF No. 13, which the Court granted, June 17, 2021 Text Order. On July 20, 2021, Plaintiffs moved for leave to file a sur-reply. Mot. Leave Sur-Reply 1. On January 19, 2022, Defendant filed a motion to

cite additional authority. First Mot. Leave Add'l Auth. 1. On February 28, 2022, Defendant filed a second motion for leave to cite additional authority. Second Mot. Leave Add'l Auth. 1.

## DISCUSSION

### I.    Plaintiff's Motion for Leave to File a Sur-Reply

The Local Rules do not explicitly allow for sur-replies, but the Court "ha[s] the discretion to grant parties leave to file additional pleadings, to include sur-replies to a motion to dismiss." *Carlson v. Ameren Corp.*, No. 10-01230, 2011 WL 612725, at *2 (C.D. Ill. Feb. 15, 2011). "The decision to permit the filing of a sur[-]reply is purely discretionary and should generally be allowed only for valid reasons, such as . . . new arguments in a reply brief." *Meraz-Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011); *see also Hanson Eng'rs Inc. v. UNECO, Inc.*, 64 F. Supp. 2d 797, 798 (C.D. Ill. 1999) ("[L]eave should not be so freely granted that it would render the general prohibition of replies ineffective.").

Plaintiffs maintain a sur-reply is necessary to "address substantive arguments related to two cases that [Defendant] advanced for the first time in its Reply." Mot. Leave Sur-Reply 1. Having reviewed Plaintiffs' proposed sur-reply, the Court notes that Plaintiffs' argument regarding one of those two cases, *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888 (S.D. Ill. 2020), does not respond to an argument introduced in Defendant's reply but rather advances a new argument that could have been previously raised. *See* Proposed Sur-Reply 2–3, ECF No. 15-1 (arguing that Defendant's interpretation of *Stauffer* to hold that BIPA exempts GLBA-regulated financial institutions is incorrect); Mem. Supp. Mot. Dismiss 3, ECF No. 9 (citing *Stauffer* for the principle that BIPA "does not apply to financial institutions already subject to GLBA" (quotation marks omitted)). The other argument, which challenges Defendant's interpretation of a state-court transcript attached to the response, *see* Proposed Sur-

3

Reply 4, is unnecessary given that the Court is in possession of the transcript. *See Cummins, Inc. v. TAS Distrib. Co.*, 676 F. Supp. 2d 701, 705 (C.D. Ill. 2009) ("The Court is quite capable of determining the effect of these supposed misstatements of law on its own . . . ."). Accordingly, the Court denies Plaintiffs' motion for leave to file a sur-reply. *See Daker v. State Farm Fire & Cas. Co.*, Case No. 1:20-cv-01052, 2021 WL 2877171, at *3 (C.D. Ill. July 8, 2021) (denying a plaintiff's motion for leave to file a sur-reply where no new issues were raised in the reply).

## II. Defendants' Motions for Leave to Cite Additional Authority

The Court has the discretion to grant parties leave to cite additional authority when recent case law sheds light on an issue of relevance to the disposition of a motion. *See, e.g.*, *Clinton Hill v. Sood*, No. 18-4133, 2020 WL 12697470, at *1 (C.D. Ill. Feb. 20, 2020). Defendant seeks leave to cite recent state and federal court orders pertaining to BIPA claims brought by student test-takers against university defendants. *See* First Mot. Leave Add'l Auth. 1; Second Mot. Leave Add'l Auth. 1. Accordingly, both motions are granted. *See Clinton Hill*, 2020 WL 12697470, at *1.[2] The Court will consider the additional authority.

## III. Standing

Neither party has challenged the Court's subject-matter jurisdiction, but "[w]hen a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented," *Gonzalez v. Thaler*, 565 U.S. 134, 141

---

[2] In a related issue, Plaintiffs filed a notice of supplemental authority without seeking leave to do so, s*ee* Not. Supp. Auth. 1–2, ECF No. 17, which Defendants argue is procedurally improper in light of Local Rule 7.1, Resp. Not. Supp. Auth. 1, ECF No. 18. However, "Local Rule 7.1(B)(3) only prohibits the filing of a 'reply' to a motion without first obtaining leave of Court; the Rule says nothing of Notices of Supplemental Authority." *Laufer v. Q ILL Dev., LLC*, Case No. 20-cv-3149, 2021 WL 1202329, at *1 (C.D. Ill. Mar. 30, 2021). Moreover, Defendant never moved to strike Plaintiffs' notice. *Cf.* Resp. Not. Supp. Auth. 1. The Court sees nothing barring it from considering Plaintiffs' additional authority, but notes that the authority brought to its attention is of limited usefulness: It is not about BIPA, does not involve a university defendant, and does not apply Illinois' statutory interpretation rules. *See* Not. Supp. Auth. 1 (citing *O'Leary v. TrustedID, Inc.*, No. 3:20-CV-02702-SAL, 2021 WL 4129202 (D.S.C. Sept. 9, 2021)); *O'Leary*, 2021 WL 4129202, at *5–7.

(2012). A *sua sponte* inquiry into subject-matter jurisdiction is prudent in the BIPA context because "standing requirements in Illinois courts are more lenient than those imposed by Article III." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 622 (7th Cir. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."). Accordingly, before considering Defendant's motion to dismiss, the Court will begin by ensuring it has subject-matter jurisdiction over Plaintiffs' claims by evaluating whether Plaintiffs have Article III standing as to each of them. *See Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) ("[W]e begin with our independent duty to ensure that this case is properly in federal court." (quotation marks omitted)).

"At the pleading stage, [Article III] standing requires allegations of a concrete and particularized injury in fact that is traceable to the defendant's conduct and redressable by judicial relief." *Id.* "The injury-in-fact requirement is usually the main event in litigation over standing," *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020), so the Court will focus its analysis on whether Plaintiffs have satisfied that requirement.

Here, Plaintiffs bring claims under four separate sections of BIPA: Section 15(a), Section 15(b), Section 15(c), and Section 15(d). Am. Class Action. Compl. ¶¶ 122–52. The Seventh Circuit has held that violations of Section 15(b), which prohibits unauthorized data collection, and Section 15(d), which prohibits the dissemination of biometric information, inflict Article III injuries. *See Cothron*, 20 F.4th at 1161 ("[A] violation of section 15(d) inflicts a concrete and particularized Article III injury."); *Bryant*, 958 F.3d at 619 ("We conclude that a failure to follow [S]ection 15(b) . . . leads to an invasion of personal rights that is both concrete and

5

particularized."). Accordingly, the Court has subject-matter jurisdiction over Plaintiffs' Section 15(b) and Section 15(d) claims.

Unlike Section 15(b) and Section 15(d), Section 15(a) and Section 15(c) "impose duties owed only to the public generally—the violation of which does not, without more, confer standing." *Cothron*, 20 F.4th at 1161; *see also Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248 (7th Cir. 2021) (concluding that the plaintiffs did not have Article III standing because the alleged injury was "only a general, regulatory violation [of Section 15(c)], not something that is particularized to them and concrete"). Thus, the Court must examine Plaintiffs' Section 15(a) and Section 15(c) allegations in greater detail to determine whether the alleged injury is sufficient to confer Article III standing.

As for Section 15(c), which prohibits profiting from biometric information, the Court finds Plaintiffs' Amended Class Action Complaint lacks allegations suggesting Defendant's violation has inflicted a concrete and particularized harm to Plaintiffs. *Cf.* Am. Class Action. Compl. ¶ 144 (alleging that Plaintiffs suffered "injury" caused by Defendant's Section 15(c) violation). Allegations as to Defendant's commercial advantage from the collection of Plaintiffs' biometric information are more specific regarding the nature of Defendant's alleged unlawful profit, *see id.* ¶¶ 141–42, but those allegations do not speak to the nature of Plaintiffs' resultant injury. *See King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL 5006692, at *5 (N.D. Ill. Oct. 28, 2021) ("[The defendant's] competitive advantage in the . . . marketplace isn't an injury particular to [the plaintiff]."). Without allegations that Plaintiffs suffered any injury beyond a general regulatory violation of Section 15(c), the Court cannot conclude they have Article III standing with respect to that claim. *See Thornley*, 984 F.3d at 1247–49; *see also Carpenter v. McDonald's Corp.*, Case No. 1:21-cv-02906, 2021 WL 6752295, at *4–5 (N.D. Ill. Nov. 1,

6

2021) (finding the plaintiff had no Article III standing as to his Section 15(c) claim where "[he] ultimately allege[d] a general regulatory violation and nothing close to the type of personal, individual harm that the *Thornley* court observed might confer Article III standing").

Finally, as for Section 15(a), the Seventh Circuit has held that a violation of Section 15(a)'s duty to publicize a data-retention schedule does not inflict an Article III injury, but the unlawful retention of biometric information by a defendant is sufficient to do so. *See Cothron*, 20 F.4th at 1161; *see also Carpenter*, 2021 WL 6752295, at *3 ("The question, therefore, is whether [the p]laintiff merely alleges [the d]efendant's failure to disclose its policy, or alleges more—like unlawful retention."). Here, Plaintiffs' specific allegations regarding Section 15(a) focus on Defendant's failure to publicize a data-retention schedule, not its retention of biometric information. *See* Am. Class. Action Compl. ¶¶ 122–29. But Plaintiffs also allege that Defendant does not comply with a data-retention schedule and stores "vast amount[s]" of their biometric information. *Id.* ¶¶ 4–5, 126. Courts have found a defendant's failure to comply with a data-retention schedule sufficient to confer an Article III injury. *See Kalb v. GardaWorld CashLink LLC*, Case No. 1:21-cv-01092, 2021 WL 1668036, at *3 (C.D. Ill. Apr. 28, 2021); *Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 683 (N.D. Ill. 2020); *Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1008 (S.D. Ill. 2020); *see also Carpenter*, 2021 WL 6752295, at *3 (finding that the plaintiff had no standing to bring his Section 15(a) claim "[g]iven the lack of any allegation regarding [the d]efendant's failure to comply with a policy"); *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2021 WL 4711741, at *4 (N.D. Ill. Oct. 8, 2021) ("[The p]laintiffs here have not alleged that [the defendant] failed to comply with any such policies."). And because Plaintiffs are students, their stake in Defendant's non-compliance is more than "a generalized grievance shared by all members of the public." *See Carpenter*, 2021 WL 6752295,

at *1.  Accordingly, as Plaintiffs allege Defendant has violated Section 15(a) by failing to comply with a biometric-information retention schedule and retaining their biometric information, the Court concludes Plaintiffs have Article III standing with respect to their Section 15(a) claim.

Thus, Plaintiffs' Section 15(c) claim is severed and remanded to state court.  *See Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 819 (7th Cir. 2010) ("If some parts of a single suit are within federal jurisdiction, while others are not, then the federal court must resolve the elements within federal jurisdiction and remand the rest.").  The Court will proceed by addressing Defendant's motion to dismiss with respect to Plaintiffs' remaining BIPA claims.

### IV. Motion to Dismiss

#### a. Legal Standard

A complaint must contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A party may move to dismiss a complaint if it fails to state a claim upon which relief can be granted.  *Id.* 12(b)(6).  To analyze the sufficiency of a complaint, the court "must construe it in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014).  A court must "determine whether [the complaint's well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  These allegations must "raise a right to relief above the speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation marks omitted); *see also Carlson*, 758 F.3d at 826–27 ("A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together." (quotation marks omitted)).

"A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

    b. **Analysis**

BIPA "was enacted in 2008 to help regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1203 (Ill. 2019) (quotation marks omitted); *see also* 740 ILCS 14/5(g) ("The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information."). To that end, BIPA "imposes numerous restrictions on how private entities collect, retain, disclose and destroy biometric identifiers." *Rosenbach*, 129 N.E.3d at 1199. However, those restrictions do not "apply in any manner to a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 [("GLBA")] and the rules promulgated thereunder." 740 ILCS 14/25(c) ("Section 25(c)").

Defendant argues that because it is a "financial institution" as the term is defined by the GLBA, it is not subject to BIPA. Mem. Supp. Mot. Dismiss 3–6. In response, Plaintiffs argue that because BIPA does not expressly define the term "financial institution" or "expressly borrow a definition . . . from the GLBA or another statute, . . . . the term 'financial institution' must be given its popularly understood meaning," which does not include universities like Defendant. Mem. Opp. Mot. Dismiss 3–4, ECF No. 12.

Matters of statutory interpretation are questions of law. *See Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 458 (7th Cir. 2006). Because BIPA is an Illinois law, the Court must

apply Illinois' statutory interpretation rules. *See Pastors Protecting Youth v. Madigan*, 237 F. Supp. 3d 746, 749 (N.D. Ill. 2017) ("As a federal court interpreting Illinois law, the Court defers to Illinois' rules of statutory interpretation."). "When construing a statute, [an Illinois court's] primary objective is to ascertain and give effect to the legislature's intent." *Rosenbach*, 129 N.E.3d at 1204. "The plain language of a statute is the best indication of the legislature's intent." *Maksym v. Bd. of Election Comm'rs of City of Chi.*, 950 N.E.2d 1051, 1060 (Ill. 2011).

In *Rosenbach*, the Illinois Supreme Court applied Illinois' statutory interpretation rules to determine the meaning of the phrase "[a]ny person aggrieved" in BIPA. *Rosenbach*, 129 N.E.3d at 1202–07 (quoting 740 ILCS 14/20). In so doing, the court invoked two canons of construction: "Where . . . a statutory term is not defined, [the courts] assume the legislature intended for it to have its popularly understood meaning. Likewise, if a term has a settled legal meaning, the courts will normally infer that the legislature intended to incorporate that established meaning into the law." *Id.* at 1205.

Here, the applicability of the second canon is readily apparent. "Financial institution" is the specific term of art used in the GLBA to describe GLBA-regulated entities and Section 25(c) discusses the exemption of "financial institution[s]" from BIPA in reference to the GLBA. *See* 16 C.F.R. § 313.3(k)(1). And "[w]hen a statute employs words having a well-known legal significance, courts will, in the absence of any expression to the contrary, assume that the legislature intended the words to have that meaning." *Harris v. Manor Healthcare Corp.*, 489 N.E.2d 1374, 1380 (Ill. 1986); *see also People v. Smith*, 923 N.E.2d 259, 264 (Ill. 2010) ("The . . . [appellate] court ignored the fact that "preliminary examination" is a legal term of art . . . ."). Thus, absent any evidence to the contrary, the Court must conclude that the Illinois legislature intended "financial institution" to have the meaning given to it by the GLBA.

It must also be considered that Section 25(c) applies not only to "financial institution[s]" but to "affiliate[s] of a financial institution" as well. 740 ILCS 14/25(c); *see Cassidy v. China Vitamins, LLC*, 89 N.E.3d 944, 953–54 (Ill. App. Ct. 2007) ("Terms of art abound in the law, and the *entire phrase* . . . is a term of art . . . ." (emphasis added)). "Affiliate" is also a term of art defined by the GLBA. *See* 16 C.F.R. § 313.3(a). Section 25(c)'s use of the phrase "affiliate of a financial institution" in conjunction with the term "financial institution" is additional evidence that the legislature intended to import the GLBA's definitions of "affiliate" and "financial institution" into BIPA because otherwise, in addition to the term "financial institution" itself, the open-ended phrase "affiliate of a financial institution" would remain undefined. *See Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*, 164 N.E.3d 1226, 1234 (Ill. 2020) ("Without a clear definition, [the defendant is] left with no guidance for how to implement the statute. Thus, . . . [the] plaintiff's construction of the statute would violate the principle that statutes should be construed in such a way as to avoid impractical or absurd results." (quotation marks omitted)).

Plaintiffs' arguments as to why the Court should apply an alternate definition of "financial institution" are unavailing. *See* Mem. Opp. Mot. Dismiss 3–5. Plaintiffs argue that if the term "financial institution" were not assigned its everyday meaning, it would be rendered "superfluous" because the legislature could have used the term "private entity" in its place to convey the same meaning. *Id*. at 5. This argument overlooks the specific meaning of the term "financial institution" to describe regulated entities within the context of the GLBA, which is the subject of Section 25(c). *See Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990) ("A statute should be construed so that no word or phrase is rendered superfluous or meaningless."). Moreover, Plaintiffs' interpretation of Section 25(c) does not avoid superfluity: If Section 25(c) was intended to apply only to "federally regulated 'banks,'" *id.* at 6; *see also id.* at 5 ("[T]he

11

financial institution exemption was meant to apply to *banks*."), the legislature could have exempted banks from BIPA without referencing the GLBA at all, *cf. Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 844 (N.D. Ill. 2021) ("[I]f the Illinois legislature had intended to exclude health care workers from BIPA, there was a much more straightforward means to do so.").

Plaintiffs further contend applying the GLBA's definition of "financial institution" to BIPA would be absurd because it would result in outcomes that Plaintiffs argue would contravene legislative intent. *See* Mem. Opp. Mot Dismiss 5, 8–9, 11–12 ("It makes no sense that the very entities that the statute was designed to regulate would then be excluded . . . ."). To the extent Plaintiffs are invoking the absurdity doctrine, that principle applies when "literal construction of a statute would lead to consequences which the legislature could not have contemplated," such as convicting a surgeon under the apocryphal law prohibiting drawing blood in the streets. *See People v. Hanna*, 800 N.E.2d 1201, 1208 (Ill. 2003). It is not obvious why the outcome Plaintiffs deem absurd in this case—exempting all GLBA-regulated financial institutions from BIPA—would have been beyond the legislature's contemplation in crafting Section 25(c) or is otherwise unreasonable. *See Doe v. Northwestern Univ.*, Case No. 21 C 1579, at 2 (N.D. Ill. Feb. 22, 2022) ("[T]he exemption does not undermine BIPA's remedial purpose because the exempted financial institutions are still subject to GLBA's privacy scheme."), Second Mot. Cite Add'l Auth. Ex. A, ECF No. 20-1. Courts have made similar observations in rejecting Plaintiffs' related argument that a contrary interpretation of BIPA would render it unconstitutional special legislation in Illinois, Mem. Opp. Mot. Dismiss 11–14. *See Stauffer*, 480 F. Supp. 3d at 901–03 ("The financial institution distinction made by BIPA cannot be found to be 'artificially narrow' in its focus since both exempt and non-exempt financial institutions are

subject to data reporting laws, with neither group receiving a benefit the other does not."); *Bryant v. Compass Grp. USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) ("The General Assembly likely excluded financial institutions because they are already subject to a comprehensive privacy protection regime under federal law.").

Under Illinois' rules of statutory interpretation, courts may only consider extrinsic aids for construction if the statutory language is ambiguous. *See Land v. Bd. of Educ. of City of Chi.*, 781 N.E.2d 249, 257 (Ill. 2002); *see also Kunkel v. Walton*, 689 N.E.2d 1047, 1055 (Ill. 1997) ("[B]ecause the language of the statute is plain and unambiguous, we have no occasion to consider its legislative history.").[3] The Court sees no ambiguity in the statutory language, and thus concludes that Section 25(c) exempts "financial institution[s]" subject to the GLBA from BIPA.

Having reached that conclusion, the Court must now consider whether Defendant is in fact a GLBA-regulated financial institution and whether it is appropriate to grant Defendant's motion to dismiss on this basis. The definition of "financial institution" under the GLBA is broad and contains several entities "not traditionally recognized as financial institutions." *See F.T.C. v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 457 (D. Md. 2004). "An institution that is significantly engaged in financial activities, or significantly engaged in activities incidental to such financial activities, is a financial institution." 16 C.F.R. § 313.3(k)(1). The Federal Trade Commission has indicated colleges and universities are financial institutions where "such institutions appear to be significantly engaged in lending funds to consumers." *See* Privacy of

---

[3] Nevertheless, the Court briefly notes that it observes no great tension between Section 25(c) and the General Assembly's legislative finding that "[m]ajor national corporations have selected the City of Chicago and other locations in [Illinois] as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at . . . school cafeterias," 740 ILCS 14/5(b), as Section 25(c) does not touch elementary schools, secondary schools, or commercial entities operating cafeterias therein so long as those entities are not GLBA-defined financial institutions.

13

Consumer Financial Information, 65 Fed. Reg. 33646, 33,648 (May 24, 2000) ("The Commission disagrees with those commenters who suggested that colleges and universities are not financial institutions.").

Defendant has attached judicially noticeable documents from the U.S. Department of Education indicating its participation in federal student aid programs requiring GLBA and FERPA compliance. *See* Program Participation Agreement 1–2, Reply Ex. F Part I, ECF No. 14-6; *see also Fernandez v. Zoni Language Ctrs., Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *2–3 (S.D.N.Y. May 18, 2016) (taking judicial notice of the U.S. Department of Education website and New York Department of Education certificates). At least two other courts have recently dismissed student test-takers' BIPA claims against university defendants based on similar evidence, finding it sufficient to demonstrate the university defendant was a financial institution even at the motion to dismiss stage. *See Northwestern Univ.*, Case No. 21 C 1579, at 3; *see also* Tr. 4:2–5:7, 25:21–26:9, *Doe v. Elmhurst Univ.*, 2020 L 1400 (Ill. Cir. Ct. Nov. 18, 2021), First Mot. Cite Add'l Auth. Ex. 2, ECF No. 19-2. Here, too, the Court finds Defendant has demonstrated it is a financial institution within the meaning of the GLBA by virtue of its significant engagement lending funds to consumers. *See* 16 C.F.R. § 313.3(k)(1). Accordingly, Section 25(c) exempts Defendant from BIPA, and Plaintiffs' claims must be dismissed.

## CONCLUSION

The Court has no jurisdiction over Plaintiffs Thomas Duerr and Gabriel Foley's Section 15(c) claim, so it is severed and remanded to state court for further proceedings. *See Smith v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 23 F.3d 1134, 1139 (7th Cir. 1994) (holding that there is no implicit futility exception to the requirement that a federal court remand any claims over which it has no subject matter jurisdiction in a removal case). Defendant Bradley

University's motion to dismiss, ECF No. 8, is granted as to Plaintiffs' Section 15(a), Section 15(b), and Section 15(d) claims. Plaintiffs' motion for leave to file a sur-reply, ECF No. 15, is DENIED, Defendant's first motion for leave to cite additional authority, ECF No. 19, is GRANTED, and Defendant's second motion for leave to cite additional authority, ECF No. 20, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 10th day of March, 2022.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
